IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SOUTHERN STAR CENTRAL GAS )
PIPELINE, INC., )
 )
            **Plaintiff,** )
 )
v. )   CIVIL ACTION
 )
 )   No. 08-2115-KHV
PATRICIA A. GREUEL, et al., )
 )
            **Defendants.** )
_____)

**MEMORANDUM AND ORDER**

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Southern Star Central Gas Pipeline, Inc. ("Southern Star") brings suit against Patricia A. Greuel and Daniel J. Greuel seeking a declaration that it owns an irrevocable license or prescriptive easement over a portion of defendants' property. This matter is before the Court on defendants' Motion To Dismiss For Lack of Jurisdiction (Doc. #4) filed April 10, 2008. For reasons stated below, the Court overrules the motion.

**Legal Standards**

Rule 12(b)(1), Fed. R. Civ. P., governs motions to dismiss for lack of subject matter jurisdiction. Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations. Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Because defendants attack the accuracy of plaintiff's allegations, the court may consider evidence outside of the complaint. Id. Federal courts may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is

lacking," Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); see also Fed. R. Civ. P. 12(h)(3). Because federal courts are courts of limited jurisdiction, the law imposes a presumption against jurisdiction. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).

**Factual Background**

Southern Star's complaint and the record evidence are summarized as follows:

In March of 2007, defendants purchased approximately 20 acres of land in Cowley County, Kansas.

Southern Star transports natural gas through underground pipelines. It is the successor company to Wichita Pipe Line Company. In September of 1917, the then-owners of the Cowley County property granted Wichita Pipe Line a blanket right of way to construct a pipeline beneath the property and the parties executed a right of way agreement. As part of a 43.86-mile pipeline route through Kansas and Oklahoma, Wichita Pipe Line then constructed a 12-inch pipeline under the property. Since that time, Wichita Pipe Line and its successors (including Southern Star) have operated and maintained the pipeline in the same open and obvious location. On several occasions from October of 1958 to May of 1983, Southern Star entered the Cowley County property to perform work on the pipeline. In the summer of 1984, Southern Star replaced the 12-inch pipeline with a six-inch pipeline. In each of these instances, without objection, Southern Star informed the land owner that it would enter the Cowley County property and compensated the land owner for damage which it caused while working on the pipeline.

In February of 2008 – approximately 11 months after they purchased the Cowley County

-2-

property – defendants informed Southern Star that the pipeline right of way across their property had not been recorded with the county register of deeds. Southern Star confirmed that the right of way was unrecorded. The record contains correspondence from defendants requesting that Southern Star compensate them for the intrusion of the pipeline. Specifically, defendants suggested that Southern Star purchase rights to run the pipeline across the property, purchase the property outright or reroute the pipeline from its current location. Defendants asked Southern Star to submit proposed actions and established a negotiation deadline of March 14, 2008. The complaint alleges that the cost of purchasing the property rights or relocating the pipeline would be more than $75,000. Through affidavit, Southern Star field engineer Barbara Williams estimates that rerouting the pipeline around defendants' property would cost $214,385.[1]

In this action, Southern Star seeks a declaration that it owns an irrevocable license (Count I) or a prescriptive easement (Count II) across defendants' property which permits it to operate and maintain the pipeline as is. Southern Star asserts subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). Defendants argue that the Court should dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, abstain from hearing this declaratory judgment action.

## **Analysis**

Defendants argue that the Court should dismiss plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1) because they do not meet the jurisdictional amount in controversy. In the alternative, defendants argue that the Court should abstain from hearing this declaratory judgment action.

---

[1] This estimate includes survey, engineering, labor and material costs.

## I. Subject Matter Jurisdiction

Section 1332(a) permits the court to hear actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000." Defendants argue that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed the jurisdictional minimum. Where plaintiff has apparently pled the amount in controversy in good faith, "[i]t must appear to a legal certainty that the claim is really for less that the jurisdictional amount to justify dismissal." Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1183 (10th Cir. 2000) (citing St. Paul Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). Plaintiff bears the burden to demonstrate that it is not legally certain that its claims are less than the jurisdictional amount. Woodmen of the World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003). The legal certainty standard is "very strict," and dismissal is generally warranted only where a contract limits the possible recovery, the law limits the amount recoverable or plaintiff has committed an obvious abuse of federal court jurisdiction. Id. at 1216-17.

In a declaratory judgment action, the amount in controversy is measured by the pecuniary effect that an adverse decision will have on either party to the lawsuit. Mid-Am. AG Network, Inc. v. Monkey Island Dev. Auth., 109 Fed. Appx. 187, 189 (10th Cir. 2004). From Southern Star's perspective, the complaint alleges that it stands to lose more than $75,000 if defendants successfully challenge its right of way and it is forced to reroute the pipeline or purchase rights to run the pipeline through defendants' property. Defendants argue that Southern Star does not have a good faith basis for this allegation because (1) it cannot be forced to reroute the pipeline and (2) the record contains no evidence of the fair market value of the property.

Defendants argue that Southern Star is a public utility which may exercise eminent domain

over their property, thereby eliminating any possibility that it could be ordered to reroute the pipeline. Although Kansas law permits public utilities – including pipelines companies – to exercise eminent domain, see K.S.A. § 17-618, this power is subject to challenge through civil litigation, see Schuck v. Rural Tel. Serv. Co., --- Kan. ---, 180 P.3d 571, --- (2008) (condemnee may challenge right to exercise eminent domain and necessity and extent of taking in civil action). At this point, the Court cannot find to a legal certainty that Southern Star can claim defendants' property through eminent domain. For purposes of determining the amount in controversy where eminent domain is possible, but not certain, the Court considers the cost to Southern Star if condemnation fails. See Le Blanc v. Colonial Pipeline Co., 49 F. Supp.2d 922, 924 (E.D. Tex. 1999) (from perspective of pipeline company which may or may not be able to exercise eminent domain, amount in controversy includes damages which it will suffer if condemnation does not occur). In that event, Southern Star could be required to reroute the pipeline around defendants' property,[2] which Southern Star alleges will cost more than $75,000. Because it has no reason to believe that this allegation is not made in good faith, the Court finds that the complaint is sufficient to establish the necessary amount in controversy. See Adams, 225 F.3d at 1183 (allegations in complaint alone can be sufficient to make showing that it is not legally certain that claim is less than jurisdictional amount). Even if the Court questioned the allegation, the record contains evidence that rerouting the pipeline would cost an estimated $214,385.[3] Defendants do not challenge this calculation, and the affidavit is competent to establish

---

[2]   The fact that defendants have proposed rerouting the pipeline as a solution to this dispute lends credibility to this scenario.

[3]   Defendants attempt to defeat federal jurisdiction by disclaiming any recovery from Southern Star of more than $75,000. They cite no authority for the proposition that such a stipulation may defeat subject matter jurisdiction. Cf. Watson v. Blankinship, 20 F.3d 383, 387 (10th Cir. 1994)
(continued...)

a sufficient amount in controversy. See Mid-Am. AG Network, 109 Fed. Appx. at 189 (in determining amount in controversy, district court may consider uncontroverted affidavit). From the complaint and record evidence, the Court is satisfied that it has subject matter jurisdiction over this action.

Even if the Court did not consider the cost of rerouting the pipeline, it would find a sufficient amount in controversy. Assuming that Southern Star was forced to purchase the right to operate and maintain its pipeline on defendants' property, the complaint alleges that the cost of that right would exceed $75,000. Again, the Court has no reason to doubt the good faith basis of this allegation. See Woodmen of the World, 342 F.3d at 1216 (court applies strong presumption favoring amount which plaintiff alleges). The record contains no evidence that the value of the property right is limited by contract or law, or that Southern Star has committed an obvious abuse of federal court jurisdiction in alleging the amount in controversy. Under these circumstances, the Court cannot find to a legal certainty that Southern Star would not pay more than $75,000 to secure the right to operate and maintain its pipeline on defendants' property. Accordingly, the Court overrules the motion to dismiss on the ground that it lacks subject matter jurisdiction.

## II.    Abstention

Defendants argue that the Court should abstain from hearing this declaratory judgment action. The Declaratory Judgment Act vests the Court with broad discretion to render declaratory relief. See Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1273 (10th Cir. 1989) (Declaratory Judgment Act does

---

³(...continued)
(amount in controversy determined when complaint filed; subsequent events that change amount in controversy do not divest district court of subject matter jurisdiction). Moreover, the estimated cost of rerouting the pipeline includes survey, engineering, labor and material costs which defendants cannot simply wish away.

not impose duty on trial court to make declaration of rights); Executive Risk Indem. Inc. v. Sprint Corp., 282 F. Supp.2d 1196, 1202 (D. Kan. 2003) (courts have unique and substantial discretion under Declaratory Judgment Act). In deciding whether to entertain a declaratory judgment action, the Court considers whether (1) it would settle the controversy; (2) it would serve a useful purpose in clarifying the legal relation at issue; (3) it is being used merely for purposes of procedural fencing or to provide an arena for a race to res judicata; (4) it would increase friction between the federal and the state court and improperly encroach upon state jurisdiction; and (5) there is an alternative remedy which is better or more effective. State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).

Defendants argue that Southern Star has filed this declaratory judgment action as a means of procedural fencing. The Tenth Circuit has recognized that "[a] district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing." St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1179 (10th Cir. 1995). Here, the record does not convince the Court that Southern Star has engaged in procedural fencing. The parties' correspondence reflects preliminary efforts at dispute resolution and sets a negotiation deadline of March 14, 2008. Southern Star filed this action on the expiration of that deadline. The record contains no evidence that defendants intended to file suit in this matter, and nothing in the timing of this action suggests that Southern Star intended the action as an improper preemptive measure. See WBS Connect, LLC v. One Step Consulting, Inc., No. 07-cv-00514-WDM-CBS, 2007 WL 4268971, at *9 (D. Colo. Nov. 30, 2007) (no procedural fencing where declaratory judgment action results from stalled negotiation and plaintiff has no notice that defendant intended to file suit); cf. Mid-Continent Cas. Co. v. Se. Kan. Indep. Living Res. Ctr., Inc., No. 05-4092-RDR, 2005 WL 3240843, at *2 (D.

Kan. Nov. 30, 2005) (finding improper procedural fencing where declaratory judgment action filed as apparent reaction to imminent filing of state court case).  Accordingly, the Court finds no procedural fencing which would compel it to avoid this declaratory judgment action.

Defendants do not argue that any of the remaining Mhoon factors favor dismissal of the case. Having considered those factors, the Court is satisfied that it should entertain this declaratory judgment action.  Defendants' motion to dismiss on this ground is therefore overruled.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss For Lack of Jurisdiction (Doc. #4) filed April 10, 2008 be and hereby is **OVERRULED**.

Dated this 26th day of June, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge