IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SOUTHERN STAR CENTRAL ) | | |
| GAS PIPELINE, INC. ) | | |
| Plaintiff, ) | | CIVIL ACTION |
| v. ) | | |
| ) | | No. 08-2115-KHV |
| PATRICIA A. GREUEL and ) | | |
| DANIEL J. GREUEL ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

**MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE**

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Southern Star Central Gas Pipeline, Inc. seeks a declaration that it owns a prescriptive easement by adverse possession over property owned by Patricia A. Greuel and Daniel J. Greuel ("the Greuels"). The Greuels counterclaim, alleging trespass to land and slander of title and seeking a declaration quieting title and possession, issuing injunctive relief and initiating inverse condemnation proceedings against Southern Star. This matter comes before the Court on the Motion For Summary Judgment (Doc. #17) which Southern Star filed September 13, 2008. For the reasons stated below, the motion is sustained.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets this burden, the burden shifts to the nonmoving parties to demonstrate that genuine issues remain for trial as to those dispositive matters for which they carry the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving parties may not rest on their pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving parties' evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

**Factual Background**

In March of 2007, the Greuels purchased approximately 20 acres of land in Cowley County, Kansas. The property is legally described as:

> Beginning at the Northeast corner of the Northwest Quarter of Section 35, Township 32 South, Range 5 East of the 6th P.M., Cowley County Kansas, thence North 89 deg. 49 min. 37 sec. West (assumed) along the North line of said Quarter Section, 1309.37 feet, thence South 1 deg. 44 min. 08 sec. East, 1007.77 feet, thence South 89 deg. 14 min. 05 sec. East, 1276.35 feet to the East line of said Quarter Section, thence North 0 deg. 08 min. 45 sec. East, along the East line of said Quarter Section 1020.41 feet

> to the point of beginning, EXCEPT a tract beginning at a point on the North line, 649.37 feet West of the Northeast corner of the Northwest Quarter of Section 35, Township 32 South, Range 5 East of the 6th P.M., Cowley County, Kansas, thence North 89 deg. 49 min. 37 sec. West (assumed) along the North line of said Quarter Section, 660.00 feet, thence South 1 deg. 44 min. 08 sec. East, 660.00 feet, thence South 89 deg. 49 min. 37 sec. East, 660.00 feet, thence North 1 deg. 44 min. 08 sec. West, 660.00 feet to the point of beginning containing 20.1 acres, more or less.

See Memorandum In Support Of Plaintiff's Motion For Summary Judgment ("Plaintiff's Memorandum") (Doc. #18) filed September 13, 2008 at 4. In September of 1917, L.P. King, the legal representative of the property, granted Wichita Pipe Line Company a blanket right of way to construct a pipeline beneath the property. At that time the parties executed a right of way agreement which provided as follows:

> For and in consideration of the sum of One Hundred & Ten Dollars, to us in hand paid, receipt of which is hereby acknowledged, L.P. King, Administrator of the S.E. Woodward estate, does hereby grant to Wichita Pipe Line Co., its successors and assigns, the use of right-of-way to lay, maintain, alter, repair, operate, remove, and relay parallel Pipe Lines for the transportation of oil and gas. Said sum is acknowledged as full consideration for right-of-way occasioned by installing the first Line. Grantee to be responsible for damages to growing crops, occasioned by making future repairs to said Line, and the laying and maintaining other lines, covering certain lands in Cowley County, Kansas, [State] described as follows, to-wit: NW 1/4 of Sec. 35 Tp 32 S Range 5 E. No rock to be within eight inches of the surface on [illegible]. Damage to be paid as soon as line is completed. Said damage to be ascertained by leaving the question to the amount in the judgment to L.P. King.

See Right of Way Contact, Ex. 2A to Plaintiff's Memorandum (Doc. #18). This easement was not recorded until March 14, 2008, when Southern Star Central Gas Pipeline, Inc., a successor to Wichita Pipeline, recorded it.[1]

---

[1] In November of 1926, as part of a sale in partition, the Cowley County sheriff sold the property to L.D. Moore. See Ex. 5A to Plaintiff's Memorandum (Doc. #18) at 2. Nettie Kadau is listed as a one-sixth owner of the property prior to the sale. Id. The record does not indicate how Nettie Kadau came to own a portion of the property prior to 1926. The record does indicate that in April of 1918, Fred and Nettie Kadau were "parties to the Tenant Right of Way Contract" and
(continued...)

Beginning in 1917, pursuant to the right of way agreement and as part of a 43.86-mile pipeline route through Kansas and Oklahoma, Wichita Pipe Line constructed a 12-inch pipeline under the property. In 1922, Wichita Pipe Line merged with Quapaw Gas Company to form Empire Natural Gas Company. See Affidavit of Tim L. Thompson, Ex. 3 to Plaintiff's Memorandum (Doc. #18). Empire Natural Gas Company re-organized on July 5, 1927 and changed its name to Cities Service Gas Company. Id. at 2. On December 9, 2002, after several intervening name changes, Cities Service became Southern Star Central Gas Pipeline. Id. For clarity, the Court refers to the entities which operated the pipeline after the 1927 merger as Southern Star.

Since 1922, Southern Star has operated and maintained the pipeline in the same location. On numerous occasions between 1918 and 1984, Southern Star entered the property to install the pipeline, conduct cathodic inspections, install anodes, repair pipe and install additional pipe. On April 18, 1918, Fred and Nettie Kadau acknowledged receipt of $55.50 for "damages caused by

---

[1](...continued)
acknowledged receipt of $55 from Empire Gas Company for "damages incurred during the installation of the pipeline." See id. at 5.

In July of 1927, Moore conveyed the property to John A. and Emma M. Peninger, id. at 3, who in February 1942 conveyed it to Howard and Harold Moon. Id. at 4. In January of 1948, Howard Moon and his wife conveyed their interest in the land to Harold Moon and his wife, who became sole owners as joint tenants with the right of survivorship. Id. at 5-6. Harold Moon's wife died intestate on December 3, 1953, and title devolved to Harold Moon on that date. See id. at 9-12. Harold Moon and his second wife, Veryl, conveyed the property to William M. and A. Charlyne Paton on July 13, 1973. The Patons did not record the conveyance until March 8, 1979, id. at 7, but on March 15, 1991 they conveyed the property to Violet J. Seacat. Id. at 8. Ownership passed to Myrl Dobbs for a brief period in the mid 1990s, but the record does not indicate when or how Seacat conveyed the property to Dobbs. See Ex. 5B to Plaintiff's Memorandum (Doc. #18) at 2-3. Dobbs remained in possession until he conveyed the property to Seacat and her husband Jack Seacat on February 18, 1998. Id. at 4. Jack Seacat died on November 18, 1998, leaving Violet the sole owner. On December 10, 1999, she conveyed the property to Darren A. and Abby Young. Id. at 7. On December 14, 2000, the Youngs conveyed the property to B. Chad and Denise Crittenden. Id. at 8. They conveyed the property to the Greuels on March 14, 2007. Id. at 9.

laying, maintaining and operating said pipe line in the place and manner in which same has been laid." See Ex. 2C to Plaintiff's Memorandum (Doc. #18). In October of 1958, Southern Star entered the property to perform work on the pipeline and paid Harold Moon $100 for damages associated with entry onto the property. See Plaintiff's Memorandum (Doc. #18) at 6. Harold Moon signed receipts acknowledging the 1958 payment. See Ex. 2D to Plaintiff's Memorandum (Doc. #18). In May and September of 1977, Southern Star entered the property to inspect the pipeline and install anodes in three separate locations. See Plaintiff's Memorandum (Doc. #18) at 6. Following these two entrances onto the property, Harold Moon acknowledged receipt of $235 for damages to the property. See Ex. 2E-F to Plaintiff's Memorandum (Doc. #18). In April of 1981, Southern Star again entered the property and installed anodes. See Plaintiff's Memorandum (Doc. #18) at 6. In May of 1983, Southern Star entered the property to repair a leak in the pipeline. See Id. at 7. On May 14, 1981 and again on July 7, 1983, William Paton, the owner of the property, signed receipts for damages which Southern Star paid. See Ex. 2G1 to Plaintiff's Memorandum (Doc. #18). In July of 1984, Southern Star gave Paton notice that it planned to replace the pipeline later that year. See Ex. 2I to Plaintiff's Memorandum (Doc. #18). Southern Star entered the property later that year and replaced the 12-inch pipeline with a six-inch pipeline. See Plaintiff's Memorandum (Doc. #18) filed September 13, 2008 at 7. The record contains no evidence that Southern Star paid value to obtain a license to enter the property or that it ever received any other manifestation of permissive use from property owners. Instead, in each instance, without objection, Southern Star informed the landowner that it would enter the property and later compensated the landowner for damage caused by its work on the pipeline.

According to the affidavit of Barbara Williams, an engineer for Southern Star, Southern Star

has transported gas through the line since at least April 2, 1962, and continues to transport gas through the line. Based on meter numbers, Williams estimates that the line has been in use for "many, many years." See Affidavit of Barbara Williams, Ex. 4 to Plaintiff's Memorandum (Doc. #18) at 2.[2]

Although the written easement was not recorded until March 14, 2008, it was noted on a photographic map which describes the location of the pipeline, on file in the Cowley County Appraiser's Office. See Doc. #27 filed October 1, 2008; see also Plaintiff's Memorandum (Doc. #18) at 4. As noted above, the easement was not recorded when the Greuels purchased the property on March 14, 2007. In February of 2008, approximately 11 months after they purchased the property, the Greuels informed Southern Star that the pipeline right of way across their property had not been recorded with the county register of deeds. The Greuels did not know about the pipeline before they purchased the property and were not aware of physical markings that would have given them notice of the pipeline. The Greuels asked Southern Star to compensate them for the intrusion of the pipeline, suggested that Southern Star purchase rights to run the pipeline across the property, purchase the property outright or reroute the pipeline from its current location.

On March 14, 2008, Southern Star filed its complaint seeking a declaratory judgment against the Greuels. Specifically, Southern Star seeks a declaration that it owns a valid prescriptive easement which is 66 feet wide, along, across and under the Greuel property, with ingress and egress and the right to lay, maintain, inspect, alter, repair, operate, remove, relocate and replace its pipeline

---

[2] Defendants dispute this point but offer no evidence that Williams' affidavit is inaccurate or that gas was not transported through the pipeline since at least 1962. See Brief In Opposition To Plaintiff's Motion For Summary Judgment (Doc. #38) filed November 19, 2008 at 4-5.

and appurtenances on the property to transport oil and gas. According to an engineer for Southern Star, "[s]ixty six feet has been the standard right of way width used by Southern Star throughout its history because that width is necessary to safely and properly operate, maintain, repair, and when necessary, replace segments of the pipeline." See Affidavit of Barbara Williams, Ex. 4 to Plaintiff's Memorandum (Doc. #18).

## Analysis

Kansas applies the adverse possession statute, K.S.A. § 60-503, to determine the existence of a prescriptive easement. Section 60-503 provides as follows:

> No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years. This section shall not apply to any action commenced within one (1) year after the effective date of this act.

See K.S.A. § 60-503; see also Stramel v. Bishop, 28 Kan. App. 2d 262, 264, 15 P.3d 368, 370 (2000), rev. denied 271 Kan. 1042, 28 P.3d 1017 (2001); Taylor Inv. Co. v. Kansas City Power & Light Co., 182 Kan. 511, 518, 322 P.2d 817, 823 (1958) (prescriptive easement substantially similar to adverse possession). To prove an easement by prescription under Kansas law, plaintiff must demonstrate by clear, convincing and satisfactory evidence that it possesses an easement which is (1) open, (2) exclusive, (3) continuous, (4) knowingly adverse or under a belief of ownership and (5) for a period of 15 years. See Brady Fluid Serv. Inc. v. Jordan, 25 Kan. App. 2d 788, 794, 972 P.2d 787, 792 (Kan. App. 1998). Once established, the right to an easement is not relinquished unless the grantee abandons that right. See Williams Telecomm. Co. v. Gragg, 242 Kan. 675, 677-678, 750 P.2d 398,

400-401 (Kan. 1988).[3]

The Greuels argue that they were not aware of the easement when they purchased the property in March of 2007 and that they took the property free of the unrecorded 1917 easement. Because the original easement was not recorded until after the Greuels purchased the property, they did take the property free of the original express easement and neither side claims otherwise. See K.S.A. § 58-2223 (unrecorded instruments not enforceable unless party has notice thereof). Southern Star argues, however, that as a matter of law it owned a prescriptive easement across the property beginning in 1973, if not before, and that the Greuels' lack of knowledge of the easement is irrelevant. Southern Star specifically contends that it began entering the property as early as 1958, began transporting gas through the pipeline in 1962 and continued to access the easement until 1973 when its prescriptive rights attached. Southern Star argues that because it continued to use and access the pipeline after 1973, the easement existed when the Greuels purchased the property in 2007.

**I.     Open Possession**

Southern Star contends that it openly used the easement, that prior owners of the property were on notice of its open use, and that prior owners demonstrated this notice by acknowledging receipt of monies which Southern Star paid for damage to the property. See Plaintiff's Memorandum (Doc. #18) at 11-12. The Greuels resist summary judgment, arguing that Southern Star's use was not

---

[3] Generally, a tract of land which is burdened by an easement is known as the "servient estate," while the tract of land benefitted by the easement is referred to as the "dominant estate." See Bender v. Kan. Secured Title & Abstract Co., Inc., 34 Kan. App. 2d 399, 408, 119 P.3d 670, 677 (Kan. App. 2005). Hereinafter, the term "servient estate" refers to the Greuel property and the term "dominant estate" refers to the alleged easement.

-8-

open because the pipeline was not conspicuous.[4]

Under K.S.A. § 60-503, the holder of a prescriptive easement must demonstrate open possession of the property. See K.S.A. § 60-503. A party establishes open possession of an easement through acts which demonstrate the party's use and enjoyment of the easement where inspection of the premises would reveal such physical facts as to put a purchaser on inquiry. See Taylor Inv. Co. v. Kansas City Power & Light Co., 182 Kan. 511, 524-525, 322 P.2d 817, 828 (Kan. 1958) (electric company power lines constituted open use creating notice of company easement). Further, the law imputes to the purchaser of land "such knowledge as he would have acquired by the exercise of ordinary diligence." Id. While Kansas courts have not defined what constitutes open use in the context of an underground utility, other courts have held that physical markings and certain usages constitute open use. See e.g., VLX Props., Inc. v. So. States Util., Inc., 701 So.2d 391, 394 (Fla. Dist. App. Ct. 1997) (manhole opening, meter box and related telemetry equipment create notice of gas pipeline easement); Fossum Orchards v. Pugsley, 892 P.2d 1095, 1098 (Wash. Ct. App. 1995) (appliances and other structures connected to pipeline provided notice of gas pipeline easement); Roebuck v. Columbia Gas Transmission Corp., 386 N.E.2d 1363, 1367 (Ohio Ct. App. 1977) (utility

---

[4] On April 16, 2009, four months after Southern Star filed its reply brief, the Greuels filed their Motion To File Supplemental Response To Plaintiff's Motion For Summary Judgment (Doc. # 47). On April 28, 2009, Southern Star filed its Motion To Extend Deadline For Plaintiff To Respond To Defendants' Motion To File Supplemental Response To Plaintiff's Motion For Summary Judgment (Doc. #48). Under D. Kan. Rule 7.1, once movant has filed its reply brief, there is no provision for the filing of any other papers, whether they are called a "supplement," sur-reply, further response or something else. See Medlock v. Otsuka Pharmaceutical, Inc., No. 07-2013-JPO, 2008 WL 243674, at *4 (D. Kan. Jan. 29, 2008). The Greuels did not have leave of court to file their supplemental brief. Therefore, the Court overrules the motion. Furthermore, nothing in the proposed supplemental brief would change the outcome of this order. In addition, plaintiff's motion for extension of time is also overruled as moot.

markers disclosed existence of gas pipeline easement).

Here, Harold Moon accepted payment from Southern Star for damages incurred to his property in 1958 and again in 1977 and – like the owners in Taylor Inv. Company, who knew about electric power lines on their property – Moon was on notice of the pipeline. The Greuels do not deny that Moon was aware of Southern Star's use of the property during this period; they merely note that they were unaware of the pipeline when they purchased the property in 2007.

The Greuels' argument that they lacked actual notice of the easement is irrelevant to the issue of open possession. As a matter of law, Southern Star has demonstrated open possession of the alleged easement beginning in 1958 and continuing until at least 1977.

## II.   **Exclusive Possession**

Under a claim of prescriptive easement, possession must be exclusive. See Rowland v. Barb, No. 94-151, 2006 WL 2337219, at *4 (Kan. App. Aug. 11, 2006) (citing K.S.A. § 60-503). Exclusive possession requires that to the extent that the nature of the use will permit, the use be exclusive to the party claiming the easement. Dameron v. Kelsay, No. 96,462, 2007 WL 2580598, at *5 (Kan. App. 2007); see also Union Gas Sys., Inc. v. Carnahan, 245 Kan. 80, 87, 774 P.2d 962, 967 (Kan. 1989) (gas utility that shared occupancy of subsurface could not claim exclusivity against fee owners of mineral rights); Brady Fluid Serv., Inc. v. Jordan, 25 Kan. App. 2d 788, 794, 972 P.2d 787, 792 (Kan. App. 1998) (use of road by multiple entities not exclusive use for purposes of prescriptive easement).

Southern Star argues that as a matter of law, it has demonstrated exclusive operation, maintenance and transportation of gas through the pipeline. The Greuels do not refute this. Southern Star presents records and affidavit testimony that it maintained the pipeline between 1958 and 1984, a period which includes the time in which Southern Star established the easement. Southern Star also

presents evidence that it has transported gas through the pipeline since 1962.  Only Southern Star and its predecessors entered the property to maintain the pipeline.  The Greuels present no evidence that anyone else used the easement for any purpose.  Therefore, as a matter of law, the use of the pipeline by Southern Star and its predecessors has been exclusive.

**III.    Continuous Possession**

K.S.A. § 60-503 requires that the holder of a prescriptive easement demonstrate continuous use.  The use being acquired by prescription must be the same as the use made by the party seeking the easement and its predecessors during the requisite 15-year period.  See Dameron, No. 96,462, 2007 WL 2580598, at *6 (citing Allingham v. Nelson, 6 Kan.App.2d 294, 301, 627 P.2d 1179, 1185 (Kan. App. 1981).  Under Kansas law, however, an easement is not abandoned by mere non-use.  See Gragg,  242 Kan. at 677, 750 P.2d at 400 (citing Edgerton v. McMullan, 55 Kan. 90, 92, 39 Pac. 1021, 1023 (1895)).  In Gragg, the Kansas Supreme Court held that a company which had purchased a pipeline to transport oil and gas, but never actually transported it, had not abandoned the pipeline or the right of way.  Id.  The pipeline company manifested continuous use by trimming brush across the right-of-way, conducting regular aerial patrol of the area, maintaining the cathodic protection used to preserve the pipeline and maintaining low voltage power in several pump stations along the pipeline to avoid damage.  Id.

Southern Star argues that as a matter of law, continuous use is established by the repair, maintenance and use of the pipeline between 1917 and the last recorded entry onto the property in 1984. Southern Star also argues that its transport of gas through the pipeline since 1962 constitutes continuous possession.  The Greuels contend that Southern Star cannot establish continuous use for 15 years, see Brief In Opposition To Plaintiff's Motion For Summary Judgment (Doc. #38) at 14, but

except to say that part of the pipeline was moved ten to 15 feet from its original location in 1984, they do not explain this argument.

The record establishes that Southern Star has continuously transported gas through the pipeline since 1962 and that it has continually maintained the pipeline since 1958 in a manner analogous to the pipeline company in Gragg. By entering onto the property to conduct cathodic inspections, install anodes, repair pipe and install additional pipe, and by transporting gas through the pipeline, Southern Star continuously used the pipeline from 1958 until the present. As a matter of law, Southern Star has demonstrated continuous possession.

### IV. Belief Of Ownership

Section 60-503 requires that the party seeking a prescriptive easement demonstrate a belief of ownership in the easement which is innocently or mistakenly adverse to the owner of the property ("good faith belief of ownership"). See Dameron, 2007 WL 2580598, at *4; see also Allingham, 6 Kan. App. 2d at 298, 627 P.2d at 1183. The good faith belief requirement is defined as a good faith state of mind under circumstances which reasonably justify one's belief of ownership. See Buchanan v. Rediger, 26 Kan. App.2d 59, 67, 975 P.2d 1235, 1241 (Kan. App. 1999) (citing Akers v. Allaire, 17 Kan. App.2d 556, 558, 840 P.2d 547, rev. denied 252 Kan. 1091 (1992)). In Akers, the Kansas Court of Appeals upheld the trial court's finding that the party asserting the easement had demonstrated good faith belief of ownership by erecting a fence on the property and maintaining grass on the portion of the property that she believed she owned. See Akers, 17 Kan. App.2d at 558, 840 P.2d at 547. Conversely, in Allingham, the Kansas Court of Appeals held that claimants had not demonstrated a good faith belief in ownership because they had presented no evidence that they had an exclusive right to drive cattle along the property in question. See Allingham, 6 Kan. App. 2d at

300, 627 P.2d at 1185.

Good faith belief of ownership cannot be established where the party claiming the easement was accessing the property with the permission of the property owner. See Stramel, 28 Kan. App.2d at 264, 15 P.3d at 370 (citing Kratina v. Bd. of Comm'rs., 219 Kan. 499, 502, 548 P.2d 1232, 1235 (1976)); Brady Fluid Svc., Inc., 25 Kan. App. 2d at 794, 972 P.2d at 792 (citing Taylor Inv. Co., 182 Kan. at 519, 322 P.2d at 824). Stated another way, a license granting access to land cannot ripen into a prescriptive easement because use of the land under the license is permissive and not under a good faith belief of ownership. See Wichita Terminal Ass'n v. F.Y.G. Inv., Inc., No. 92-132, 2005 WL 824042, at *2 (Kan. App. 2005) (railroad with license to lay tracks according to ordinance could not later attempt to establish prescriptive easement).

Southern Star argues that as a matter of law, it had a good faith belief of ownership in the easement. The Greuels do not directly refute this, but argue that Southern Star accessed the property with the permission of the landowner because it gave value for the 1917 easement and paid the Greuels' predecessors for access to the land between 1917 and 1984. See Brief In Opposition To Plaintiff's Motion For Summary Judgment (Doc. #38) at 8, 13. The Greuels assert that by accepting these payments, their predecessors granted Southern Star a right of access or license which constituted permissive use and negated any belief of ownership. Id. Southern Star responds that the periodic payments were for damage to the property and not for licenses to enter. See Reply In Support Of Southern Star Central Gas Pipeline, Inc.'s Motion For Summary Judgment (Doc. #40) filed December 12, 2008 at 10-11.

Southern Star has established that as a matter of law, it possessed the easement openly, exclusively and continuously between 1958 and 2007, and that it had a good faith belief of

-13-

ownership. Similar to the claimant in <u>Akers</u>, Southern Star maintained the pipeline and conducted inspections of the pipeline in a manner consistent with a good faith belief of ownership. Southern Star's payments to the Greuels' predecessors further demonstrate its belief that it owned the easement and had to compensate owners for damages caused by accessing the easement. The original easement provided that Wichita Pipeline would compensate property owners for damages caused from the installation, maintenance and repair of the pipeline. Southern Star's conduct was entirely consistent with the un-recorded express easement. The Greuels have not demonstrated a genuine issue of material fact whether Southern Star had a mere license to enter the property or lacked a good faith belief of ownership. Southern Star has demonstrated as a matter of law that it possessed the easement under a belief of ownership between 1958 and 2007.

## V.     Time Of Possession

Section 60-503 requires proof that all elements necessary to establish a claim of easement by prescription exist simultaneously for 15 years. Southern Star has met its burden of demonstrating that between 1958 and 2007, a period of 49 years, it openly, exclusively and continuously possessed the subject property under a belief of ownership. As a matter of law, this 49 year period meets the statutory requirement of possession for at least 15 years. Under these facts, Southern Star's prescriptive easement rights attached as early as 1973, some 15 years after it entered onto the property to repair and inspect the pipeline.

## VI.    Termination Of Easement

Under Kansas law, an easement may be terminated by mutual agreement of the parties, abandonment of the easement by the owner of the dominant estate or adverse possession of the easement by the owner of the servient estate. See <u>Smith v. Harris</u>, 181 Kan. 237, 251, 311 P.2d 325,

337 (Kan. 1957); see also Mid-America Pipeline Co. v. Wietharn, 246 Kan. 238, 249, 787 P.2d 716, 724 (Kan. 1990). Termination by abandonment requires an intention to abandon the easement and acts manifesting such intention. Id. Termination by adverse possession requires strong action on the part of the owners of the servient estate such as would entitle the owners of the dominant estate to maintain an action for obstructing their enjoyment of the easement. Id.

The record contains no evidence that after establishing the prescriptive easement in 1973, Southern Star agreed with any property owner to terminate the easement. Further, the evidence does not suggest that Southern Star abandoned the easement between 1973, when it established it, and March 7, 2007, when the Greuels purchased the property. Finally, the record contains no evidence that any prior owner of the property attempted to adversely possess the easement before the Greuels purchased the property.

While Kansas has not specifically held that a prescriptive easement continues after either the dominant or servient estate is conveyed to another party, this principle is well established in other jurisdictions. See e.g., Felgenhauer v. Soni, 17 Cal. Rptr. 3d 135, 139 (Cal. Ct. App. 2004) (once created, prescriptive easement continues as matter of legal right); W. Land Title Office, LLC v. Bd. of Regents of Univ. and Cmty. Coll. Sys. of Nev., No. C042069, 2003 WL 21186685, at *4 (Cal. Ct. App. 2003) (prescriptive easement continues unless owner of servient estate does something to interrupt it; new owners acquire servient estate subject to easement); Firebaugh v. Boring, 607 P.2d 155, 157 (Ore. 1980) (absent change in condition for use of dominant tenement, prescriptive easement exists indefinitely). In W. Land Title Office, the California Court of Appeals held that when the servient owner acquired property, it did so subject to an existing prescriptive easement. See 2003 WL 21186685, at *4. The court went on to hold that once established, an easement - whether

created by grant or by use - continues until the owner of the servient estate does something to interrupt it. Id.  The California Court of Appeals further held in Felgenhauer that once an easement is created, its owner is not required to "keep the flag of hostility flying." See 17 Cal. Rptr. 3d at 139.

Kansas courts have held that adversely possessed property remains in possession of the adverse possessor even after the underlying property is conveyed to a new owner. Mulloy v. Burum, No. 91,570, 2004 WL 1489091, at *2 (Kan. App. 2004).  In Mulloy, the Kansas Court of Appeals held that a property owner who purchased his property in 1999 could not maintain an action to recover a 30-inch strip of property from adjoining property owners who adversely possessed the strip between 1974 and 1989, even though the adverse possessors never recorded their title in the 30-inch strip. Id.; see also Hushaw v. Kan. Farmers' Union Royalty Co., 149 Kan. 64, 64, 86 P.2d 559, 559 (Kan. 1939) (adverse possession destroys original owner's title to land); Freemon v. Funk, 85 Kan. 473, 476, 117 P. 1024, 1027 (Kan. 1911) (adverse possession creates title which can be used offensively or defensively)). The law of prescriptive easement in Kansas is substantially similar to the law of adverse possession, see Taylor Inv. Co., 182 Kan. at 518, 322 P.2d at 824 , and the Greuels suggest no reason why title obtained by prescriptive easement should be afforded lesser protection than that afforded to adverse possessors. As stated above, the Kansas Supreme Court has held that once established, the termination of an easement may arise in three possible instances: (1) mutual agreement to terminate the easement by the owners of the dominant and servient estate; (2) abandonment by the owner of the easement; or (3) adverse possession of the easement by the owner of the servient estate.  See id.; see also Mid-America Pipeline Co. v. Wietharn, 246 Kan. 238, 249, 787 P.2d 716, 724 (Kan. 1990).

-16-

Because Southern Star demonstrated as a matter of law that it obtained a prescriptive easement, and the easement was not terminated prior to the Greuels' purchase, the Greuels purchased the land subject to the prescriptive easement. Similar to the prescriptive easements in Felgenhauer and W. Land Title Office and the property adversely possessed in Mulloy, the Southern Star easement continued as a matter of legal right. Therefore the prescriptive easement continued as a matter of right through 2007 when the Greuels purchased the property.

**VII.   Scope Of Easement**

Generally, an easement upon another's land "extends to all uses directly or indirectly conducive to advance the purposes for which it was obtained." Spears v. Kan. City Power & Light Co., 203 Kan. 520, 527, 455 P.2d 496, 502 (Kan. 1969). Where the width, length and location of an easement for ingress and egress have been expressly set forth in the instrument the easement is specific and definite. City Of Arkansas City v. Bruton, 36 Kan. App. 2d 42, 50, 137 P.3d 508, 514 (Kan. App. 2006) (citing Aladdin Petroleum Corp. v. Gold Crown Props., Inc., 221 Kan. 579, 579, 561 P.2d 818, 819 (Kan. 1977)). The expressed terms of the grant or reservation are controlling in such case and considerations of what may be necessary or reasonable to a present use are not controlling. Id. Kansas has not specifically addressed how to define the scope of a prescriptive easement. Other courts have held that the holder of a prescriptive easement obtains a "secondary easement" and is not limited to the particular method of use in vogue when the easement was acquired, and that other methods of use for which the easement was acquired are permissible. See e.g., Erickson v. Grand Marais Pub. Utils. Comm'n, No. A03-1565, 2004 WL 1445081, at *4 (Minn. Ct. App. 2004) (citing State by Wash. Wildlife Pres., Inc. v. State, 329 N.W.2d 543, 546 (Minn. 1983)).

Southern Star asks the Court to define the proposed easement as an area 66 feet wide (33 feet on either side of the pipeline).  See Reply In Support Of Southern Star Central Gas Pipeline, Inc.'s Motion For Summary Judgment (Doc. #40) at 11.  Defendants do not oppose this specific request or offer argument in opposition.

Defining the easement as 66 feet in width advances the purposes for which the easement was originally obtained in 1917 and for which the easement has been used since at least 1958, when Southern Star first entered the property to repair and maintain the pipeline.  As defendants offer no rebuttal concerning the scope of the easement, the Court will grant Southern Star's request.

**IT IS THEREFORE ORDERED** that plaintiff's Motion For Summary Judgment (Doc. #17) filed September 13, 2008 be and hereby is **SUSTAINED**.  The Court declares that Southern Star has obtained a prescriptive easement along, across and under defendants' property 66 feet in width, and ingress and egress therefrom.

**IT IS FURTHER ORDERED** that on or before May 15, 2009, defendants shall show good cause in writing why the Court should not dismiss their counterclaim as moot and direct the Clerk to enter judgment against them.

Dated this 30th day of April, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge